Plaintiff's Name Wayne Pickering
Inmate No. P44112
Address PO Box 96
Chowchilla, CA 93610

FILED
NOV 21 2014
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Wayne Pickering
(Name of Plaintiff)

1:14 CV - 01833 - GSA PC
(Case Number)

vs.

COMPLAINT

California Dept. of Corrections
Ken Clark, T. Byers,
S. Salmi, Lee, O. Green,
A. Roman, Liu, J. Metts,
Doe's 1-3

(Names of all Defendants)

Civil Rights Act, 42 U.S.C. § 1983

RECEIVED
NOV 21 2014
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A. Have you brought any other lawsuits while a prisoner? Yes X No ___

B. If your answer to A is yes, how many? One
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)

1. Parties to this previous lawsuit:

Plaintiff Wayne Pickering

Defendants A. Enenmoh

2. Court (if Federal Court, give name of District; if State Court, give name of County)
U.S. District Court, Eastern District, Fresno Cal.

3. Docket Number 1:11cv937

4. Assigned Judge Lawrence J. O'Neil

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
Pending

6. Filing date (approx.) 6-9-11

7. Disposition date (approx.) unknown

II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes X No___

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes X No___

If your answer is no, explain why not

C. Is the process completed?

Yes X If your answer is yes, briefly explain what happened at each level.

Denied at all levels

No___ If your answer is no, explain why not.

**NOTICE:** Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant Ken Clark is employed as the Warden at the Substance Abuse Treatment Facility

B. Additional defendants California Department of Corrections and Rehabilitation; Tim Byers, Physician Assit. Substance Abuse Treatment Facility (SATF); Kevin Lee, Doctor SATF; Liu, Doctor SATF; J. Metts, Doctor SATF; Aron Rotman, Doctor SATF; S. Saini, Doctor SATF; Doe 1, Medical staff SATF; Doe 2, Medical Staff SATF; Doe 3, Warden Pleasant Valley State Prison;

IV. **Statement of Claim**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

See Attached pages 4-34.

V. **Relief.**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See attached pages 35-36.

I declare under penalty of perjury that the foregoing is true and correct.

Date 11-16-2014 Signature of Plaintiff Wayne Pickering

(revised 6/01/04)

(1) Wayne Pickering (Plaintiff) is and was during the allegation within this complaint, an inmate in the custody of California Department of Corrections and Rehabilitation (CDCR)

(2) In 2005, the remaining cartilage in Plaintiff's left knee completely disintegrated. A knee injury from an automobile accident before coming to prison. While in prison, Plaintiff was accommodated knee braces, pain medication, lower-bunk and tier chronos. CDCR was aware prior to 2005, Plaintiff suffered from a knee injury.

(3) Plaintiff submitted several Medical Request (CDCR 7362) regarding the knee has given out, severe pain and loss of mobility exist now.

(4) Plaintiff saw RN Fox, who evaluated Plaintiff's left knee and determined, Plaintiff be seen by a doctor within two days. This was on 12-19-05

(5) The Chief Medical Officer (CMO) Enenmoh, policy and oversight failed. Nurse Fox recommended Plaintiff see a doctor in two days, that was on 12-19-05. Plaintiff never saw Dr. Greene until 4-19-06. Enenmoh's failure in his duties caused a 4 month delay in acceptable medical care, Causing further pain and injury to Plaintiff

(6) On 4-19-06, Plaintiff saw Dr. Green, who documented Plaintiff was suffering severe and debilitating pain, crepitus, swelling, patellar laxity and lost ability in his left knee. Dr. Green delayed and failed to provide acceptable medical care. His request for a MRI was given only "Routine" status instead of "priority". This delays a MRI for months. Leaving the Plaintiff to suffer in pain and causing further injury.

(7) Plaintiff still in pain and mobility in the Knee is decreasing, kept putting in medical requests.

(8) On 7-7-06, Plaintiff still had not been given a MRI, due to Dr. Greens request only stating "routine"

(9) On 7-7-06, Dr. Salmi saw the Plaintiff in regards to his left knee, noted the same Dr. Green found. Dr. Salmi noted that Dr. Green's request for a MRI was not done yet. Dr. Salmi failed renew the MRI request and mark "priority". Instead, Dr. Salmi only ordered X-Rays and sent a referral for the Plaintiff to be seen by an orthapedic Surgen. However, this request was not marked "urgent" or "priority" only routine. This delays the Specialist visit for months, leaving the Plaintiff in severe pain and causing further injury.

(10) On 7-13-06, X-Rays where done on Plaintiff's left knee. On 7-21-06, Dr. Salmi reviewed the X-Rays and saw Plaintiff. Dr. Salmi determined Plaintiff's condition was not improving. Dr. Salmi further noted the MRI request from Dr. Green was not done. Dr. Salmi failed to change or Request a MRI with an "urgent" or "priority status". This delayed in Plaintiff care causing further pain and injury.

(11) On. 8-14-06, an MRI on Plaintiff's left knee was finally done by Dr. Greens request. The MRI revealed substantial damage throughout Plaintiff's entire left knee.

(12) After the MRI, it wasn't until 10-4-06 when Plaintiff saw Dr. Salmi and went over the MRI results. Dr. Salmi still noted Plaintiff was in severe pain, and the left knee still swelling. Dr. Salmi still noted his Orthopedic request on 7-7-06 was not completed. Dr. Salmi failed to look into the matter and expedite the referral. Causing further delay and Injury.

(13) On 10-18-06, Plaintiff finally saw Orthopedic Surgen Dr. Smith, who recommended arthroscopic surgery on his left knee. And any delay will cause further damage.

(14) It wasn't until 11-9-06 that Dr. Salmi saw the Plaintiff about Dr. Smith's recommendation. Dr. Salmi submitted a request for arthroscopic surgery, but failed to give the request "urgent" or "priority" status. This caused significant delay and as Dr. Smith stated, further injury.

(15) On 3-5-07, Plaintiff finally recieved arthroscopic surgery on his left knee, per Dr. Salmi's 11-9-06 request. The surgery revealed "internal derangement" throughout the entire knee.

(16) On 3-8-07 and 3-16-07, Dr. Salmi saw the Plaintiff determined he was still suffering in pain, debilitating pain, but declined to do or recommend anything to help improve plaintiff condition.

(17) On 6-6-07, Plaintiff saw Dr. Smith, Orthopedic Surgen. Dr. Smith determined Plaintiff was in debilitating pain and "ultimately a total knee replacement" is recommended.

(18) On 6-21-07, Plaintiff saw Dr. Salmi, who failed to act on Dr. Smith's recommendation for total knee replacement. Causing further pain, suffering and damage or injury.

//

//

(19) Plaintiff was in pain, suffering and mobility of the left knee was decreasing further. He still kept putting in medical requests.

(20) On 12-16-07, Plaintiff saw Dr. Lee, who evaluated Plaintiff. Determined Plaintiff was in severe pain, swelling of the knee and that Dr. Smith, the Orthopedic Surgen recommended a total knee replacement back on 6-6-7. Dr. Lee submitted a request for a total knee replacement, but the referral was only routine, not urgent, despite knowing further delay will cause further damage and it's been 6 month's since Dr. Smith's recommendation. This caused delay and further injury.

(21) On 1-29-08, Dr. Lee determined Plaintiff was still suffering, in pain and the knee still swelling. On 1-31-08 Dr. Lee Injected Plaintiff's knee with a substance

(22) Since Dr. Lee did not urgently request Plaintiff see the Orthopedic Surgen Dr. Smith. It wasn't until 3-12-08 he Saw Dr. Smith. Again, Dr. Smith recommended total knee replacement.

(23) On 5-22-08, Plaintiff's pain level and mobility of his left knee, gotten so bad, this prompted

(24) Plaintiff to be taken to an outside hospital in an ambulance. This prompted an "Urgent" referral to the Orthopedic Surgeon.

(25) On 5-28-08, Plaintiff saw the Orthopedic Surgeon. The recommendation was for "consultation for his total knee replacement".

(26) On 6-6-08, Plaintiff saw Dr. Rotman who submitted a request he be treated by the Orthopedic Surgeon. This request was "Urgent" to CMO Enenmoh.

(27) On 6-10-08, Enenmoh altered Dr. Rotman's written request to falsely indicate that Dr. Rotman's written request was "Routine" rather than "Urgent" priority.

(28) On 7-9-08 Dr. Rotman saw the Plaintiff, submitted another written request to CMO Enenmoh for a "total replacement of Plaintiff's left knee". The written request gave Plaintiff's clinical status had become worst since both his visits to Dr. Rotman. The need for total knee replace wa given a "Urgent / High Priority" by Dr. Rotman.

(29) On 8-2-08, Dr. Rotman saw the Plaintiff, determined he still was in severe pain and mobility of the left

knee impaired. Dr. Rotman resubmitted a request for total knee replacement. However, contrary to his request of 7-9-08, Dr. Rotman inexplicably documented Plaintiff's clinical status as "stable" then previously stated as "worst" and changed the priority of "Urgent / High Priority" to "should be seen ... within 30 days. This caused significant delay in surgery and further injury along with unjustifiable pain and suffering

(30) On 8-5-08, CMO Enenmoh altered Rotman's request of 8-2-08 to falsely reflect a consultation with the Orthopedic Surgeon instead of preparation for Surgery. This caused further delay and injury

(31) On 8-27-08, CMO Enenmoh finally affirmed in writting Plaintiff's condition has become to the point his condition substantially impairs his ability to perform major activities and daily life functions as to constitute a disability and warrant multiple reasonable and necessary accommodations under the Americans with Disabillities Act of 1990 (i.e. 42 U.S.C § 12101 et. seq.)

(32) On 8-28-08, a CT scan of Plaintiff's left knee was taken and revealed "advanced degenerative changes" as well as "spuring and complete obliteration of the

joint space" in Plaintiff's left knee

(33) On 9-9-08 and 10-7-08, Dr. Rotman saw the Plaintiff and determined Plaintiff still was in pain, suffering and daily activities were effected. Again, Dr. Rotman failed after each of these visit to get Plaintiff's knee Surgery "Urgent / High Priority" status so acceptable care can take place in a reasonable amount of time.

(34) Plaintiff kept putting in Medical requests. He finally saw the Plaintiff on 12-26-08 who noted Plaintiff was suffering severe and debilitating pain in his left knee.

(35) On 12-30-08, Dr. Rotman saw Plaintiff, acknowledge he was in pain and daily function where affected by the knee. Dr. Rotman noted the prescribed surgery, "total knee replacement" ordered by Dr. Smith on 5-28-08 was not done yet. Dr. Rotman failed to look into why the surgery was not scheduled yet. But only put in a referral to see Dr. Smith the Orthopedic Surgeon. This caused further delay and injury.

(36) On 1-21-09, Dr. Rotman saw Plaintiff, acknowledge he was still in pain, ordered a wheelchair for 30 days, noted surgery on the knee was not done yet. Again, Dr. Rotman failed to look into why the Surgery was

not scheduled and done. This caused further delay and injury.

(37) At the end of 2008, I wrote Ken Clark, Warden, and all the Health Care Managers, explaining I have been waiting for treatment on my knee for three years. I'm in need of a "total knee replacement" and medical is not providing me treatment.

(38) On 1-27-09, Plaintiff saw Byers (Physicians Assistant). Byers stated there was missing paperwork. Byers resubmitted paperwork to CMO Enenmoh, paperwork stated clinical status has become worst.

(39) On 2-5-09, Dr. Lewis saw Plaintiff, determined he was still in pain and daily functions were affected. Dr. Lewis as noted Plaintiff had not recieved knee surgery ordered on 5-28-08.

(40) On or about 2-19-09, Dr Rotman saw Plaintiff, noting the pain and sufferling. Dr. Rotman resubmitted paperwork for total knee replacement, marking the paperwork, clinical status "worse" as he did in 7-9-08, but changed to "stable" on 8-2-08. This is a cause of delay and further injury and sufferlng.

(41) On 3-17-09 Plaintiff saw a RN who noted suffering and pain in the left knee.

(42) On 4-27-09, Plaintiff submitted a Health Care Appeal CDCR-602 HC, Log #IA-33-2009-12732. Byers, Physicians Assistance, interviewed me on this appeal. I stated to Byers two months ago you were supposed to take care getting me surgery on my knee. Byers stated the only this missing is the referral for surgery. I asked Byers why wasn't this done by all the doctors I've seen and by him months ago. Byers just said he is granting the appeal. Byer's actions as well as the doctors, to properly process all the paperwork, played a significant part in the delay of surgery causing further pain and suffering and injury.

(43) On 5-7-09 and 5-8-09, Dr. Rotman saw the Plaintiff, still noting severe pain and loss of mobility of his left knee. Dr. Rotman submitted another request for total knee surgery and to see the orthopedic surgeon within 30 days. Dr. Rotman has now Plaintiff Primary Care Physician (PCP) for a year, since the recommendation for total knee replacement by Dr. Smith on 5-28-08. Dr. Rotman has failed in getting the surgery done, and his care is medically unacceptable. It has caused pain and suffering and further injury to the Plaintiff

//

//

(44) On 5-30-09, Correctional Officers (C/O) Long and Bauer had to be summoned to Plaintiff's cell. The Plaintiff was in excruciating pain and could not move. The C/O activated his alarm for "E" facility medical staff to respond. Plaintiff was taken by gurney to "E" facility medical clinic. Licensed Vocational Nurse (LVN) Komar called the Triage Treatment and Assessment (TTA) clinic to pick up the Plaintiff and transport to the TTA. The TTA medical staff Doe 1 and Doe 2, informed "E" medical staff they would not send the Emergency Response Vehicle (ERV). Plaintiff was told he had to walk there. Plaintiff finally convinced them he couldn't. Plaintiff was put in a wheelchair, pushed to work change and then placed in a golfcart. I was taken by golfcart to TTA by C/O Ibanez

(45) Upon arrival, C/O Ibanez and Plaintiff was met outside the TTA, by Doe 1 and Doe 2 I was told the two to walk inside the TTA. C/O Ibanez told them he could not walk. One of the nurse said, No wheelchairs are available. So Doe 2, left to get a gurney, but the male nurse, Doe 1 said to just give me a couple of shots and return me to the yard. I was given the two shots in the golf cart. No other medical examination was done by Doe 1 and

Doe2.

(46) Returning to "E" facility, C/O Ibanez tried to hold onto Plaintiff as the Plaintiff was handcuffed with his hands to his waist, and leg shackles. At a speed of 30 mph (plus or minus), Plaintiff experience a short spasm and fell out of the golf cart and tumble on the pavement. C/O Ibanez, immediately stopped and pressed his alarm. Medical responded, took the Plaintiff back to the TTA. At the TTA, Dr. Metts ordered the Plaintiff wear a cervical collar. Dr. Metts did not examine Plaintiff's left leg, knee, back, neck, even from signs of bleeding from the head, arm and leg. Dr. Metts did not treat Plaintiff for any of his injuries he just sustained, No X-Rays or physical examination, Dr. Mett failed to provide proper medical care from the incident, leaving the Plaintiff to return to his yard in even more pain and suffering and injuries. Leaving these injuries to be attended two days later by another Physician

(47) On 6-2-09, Dr. Rotman saw Plaintiff and documented the injuries sustained on 5-30-09. Dr. Rotman ordered X-Rays of the head, neck and right arm.

//

//

(48) On 6-9-09, X-Rays were taken of the Plaintiff's head, neck, shoulder and arm per Dr. Rotman's 6-2-09 Order.

(49) On 6-23-09, Dr. Liu saw the Plaintiff in regards to his multiple medical requests of still in severe pain and suffering from his left knee and for not reciving and medical care for the injuries sustained on 5-30-09. Instead, Dr. Liu lowered his pain medication significantly from 45 mg per dose to 15 mg, despite his severe knee injury, plus the additional injuries. This caused the Plaintiff to suffer even more and with the higher pain level, decrease his daily functions.

(50) On 6-29-09, Dr. Rotman saw Plaintiff, still noted that the knee surgery from Dr. Smith's 5-28-08 recommendation was not done. Dr. Rotman also told the Plaintiff his X-Rays of 6-9-09 could not be found. Dr. Rotman further stated that the knee surgery delay is from the paperwork from him to Enenmoh stated right knee not left.

(51) On 7-6-09, Plaintiff was taken to an outside hospital for yet another consultation about a need for a total knee replacement.

(52) On 7-14-09, Enenmoh finally answer the medical

appeal from 4-27-09, but failed to state why there is a delay since 2005 under his care to get a knee surgery done.

(53) On or about 7-29-09, Plaintiff finally had his knee surgery done

(54) CMO Enenmoh failed in his duties to get Plaintiff acceptable medical care for his knee.

(55) Enenmoh further caused a 4 year delay in Plaintiff recieving knee surgery.

(56) Enenmoh failed in his duties as CMO, to accommodate, process and approve medical treatment for the Plaintiff.

(57) Ken Clark, the Warden with final responsibility of his subordinates, failed in his oversight responsibilities to make sure inmates are getting proper medical care and treatment. Clark's responsibility and oversight failed to protect Plaintiff and allowed Enenmoh to alter documents causing substantial delay in medical care. Clark still failed to intervene when Plaintiff sent him notice of the harm he was recieving from medical services under his authority.

//

(58) Plaintiff was transfered to Pleasant Valley State Prison (PVSP) about 3 weeks after his Surgery, August of 2009. Plaintiff left SATF with ADA status and accommodation because of his left knee.

(59) Plaintiff arrives at PVSP with ADA status, he does not recieve ADA accommodation, such as lower tier and bunk. Plaintiff was housed on the upper tier.

(60) In the months from August 2009 to December 2009, Plaintiff did not recieve lower tier accommodations. In this time Plaintiff fell down the stairs twice and injured himself.

(61) Doe 3, Warden at PVSP, failed to have a policy in place to accommodate new arrivals with ADA status, such as lower tier, lower bunks. This caused the Plaintiff significant mobility impairment and placed the Plaintiff in a high risk of harm.

(62) On 3-26-10, Plaintiff was transfered to Sierra Conservation Center (SCC).

While in Pill Line, Inmate Patton #AA 6228 was in line for his medication. Patton was the

person before the Plaintiff. Licensed Psychiatric Technician (LPT) Bokelman was giving out medication and gave Inmate Patton the wrong medication. LPT Borden takes over and when Plaintiff get to the window tells Borden to make sure he gets the right medication. Plaintiff leaves the window. Plaintiff starts to feel adverse effects and goes back to the window, tell Borden what he's feeling, Borden looks at the medication log sheet and states "... shit I gave you the wrong medication". So I'm taken to the clinic. Vitals are taken, RN calls the on call doctor, who orders an injection of Benadryl, and for an ambulance to stand-by. After a hour or so Plaintiff recovered.

(63) Borden caused the Plaintiff to be put in a high risk medical situation that could of been life-threatening

(64) Plaintiff has mailed a timely Government Claims Form to the California Victim Compensation and Government Claims Board.

(65) All defendants acted under the Color of State Law and duties of the California Department of Correction And Rehabilitation.

//

Count I

(66) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 1-65, specifically 37, 57 inclusive to this complaint

(67) As a direct result of defendant ken Clark's failed policy and procedures in provide acceptable medical care, his oversight of the medical care inmates are recieving, caused the Plaintiff to suffer in pain and recieve further injury to his person and was otherwised harmed in violation of his constitutional rights secured by the Eight Amendment of the U.S. Constitution

Count II

(68) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 1-65, specifically 37, 57 inclusive, of this complaint.

(69) As a direct result of defendant ken Clark's failed policy and procedures in providing acceptable medical care, his oversight of the medical care inmates are recieving, caused the Plaintiff to suffer in pain and recieve further injury to his person and was otherwised harmed in violation of his constitutional

rights secured by 42 USC § 1983

Count III

(70) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 6-8, inclusive, to this complaint.

(71) As a direct result of Defendant Green, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and (or inactions, causing further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count IV

(72) Plaintiff repeats and realleges the allegation contained in paragraphs numbered 6-8, inclusive to this complaint.

///

///

///

(73) As a direct result of Defendant Green, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and / or inactions, causing further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C § 1983

Count V

(74) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 9-10, 12-19 inclusive, to this complaint.

(75) As a direct result of Defendant Salmi, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and /or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

//
//
//

Count VI

(76) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 9-10, 12-19 inclusive, to this complaint.

(77) As a direct result of Defendant Salmi, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. §1983.

Count VII

(78) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 20-22 inclusive, to this complaint.

(79) As a direct result of Defendant Lee, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will

otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count VIII

(80) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 20-22 inclusive, to this complaint.

(81) As a direct result of Defendant Lee, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and / or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

Count IX

(82) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 26-30, 32-36, 43, 47 inclusive, to this complaint.

//

//

(83) As a direct result of Defendant Rotman, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and / or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count X

(84) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 26-30, 32-36, 43, 47 inclusive to this complaint.

(85) As a direct result of Defendant Rotman, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and / or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

//

//

//

Count XI.

(86) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 42, 38 inclusive, to this complaint.

(87) As a direct result of Defendant Byers, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his/her actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count XII.

(88) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 38, 42 inclusive, to this complaint

(89) As a direct result of Defendant Byers, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his/her actions and/or inactions, causing unnecessary and unwanton pain and suffering

and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

Count XIII

(90) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 44-46 inclusive, to this complaint.

(91) As a direct result of Defendant ..... Doe 1, being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by his actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count XIV

(92) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 44-46 inclusive, to this complaint.

//

(93) As a direct result of Defendant Doe 1, being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by his actions and / or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

Count XV

(94) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 44-46 inclusive to this complaint.

(95) As a direct result of Defendant Doe 2, being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by her actions and / or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

//

//

Count XVI

(96) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 44-46 inclusive, to this complaint.

(97) As a direct result of Defendant Doe2 being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by her actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

Count XVII.

(98) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 44-46 inclusive, to this complaint.

(99) As a direct result of Defendant Metts, being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by his actions and/or inaction, causing unnecessary

and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count XIII

(100) Plaintiff repeats and realleges allegations contained in paragraphs numbered 44-46 inclusive, to this complaint.

(101) As a direct result of Defendant Metts, being deliberate indifferent to Plaintiff's serious medical needs, failed to properly treat and provide adequate medical care by his actions and/or inactions, causing unnecessary and unwanton pain and suffering and further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983.

Count XIX.

(102) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 49

inclusive, to this complaint.

As a direct result of Defendant Liu, being deliberate indifferent to Plaintiff's serious medical needs, purposely delayed medical treatment by his actions and/or inactions and caused unnecessary and unwanton pain and suffering all to which inflicted further injury to his person and will otherwise be harmed in violation of constitutional rights secured by the Eighth Amendment of the U.S. Constitution

Count XX

(103) Plaintiff repeats and realleges allegations contained in paragraphs numbered 49 inclusive, to this complaint.

(104) As a direct result of Defendant Liu, being deliberately indifferent to Plaintiff's serious medical needs, purposely delay medical treatment by his actions and/or inactions and caused unnecessary and unwanton pain and suffering all to which inflicted further injury to his person and will otherwise be harmed in violation of constitutional rights secured by 42 U.S.C. § 1983

Count XXI

(105) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 58-61 inclusive, to the complaint.

(106) As a direct result of Defendant Doe 3, being deliberate indifferent to Plaintiff's ADA status, failed in policy and procedures to accommodate the Plaintiff in a reasonable amount of time by his actions and /or inactions and will otherwise be harmed in violations of his constitutional rights secured by the Eighth Amendment of the U.S. Constitution.

Count XXII

(107) Plaintiff repeats and realleges the allegations contained in paragraphs numbered 58-61 inclusive, to this complaint

(108) As a direct result of Defendant Doe 3, being deliberate indifferent to Plaintiff's ADA status, failed in policy and procedures to accommodate the Plaintiff in a reasonable amount of time by his actions and /or inaction and will otherwise be harmed in violations of his constitutional rights secured by

42 USC § 12101(et, seq.)

Purposely left Blank

## V. Relief.

A. Appointment of Counsel:

Plaintiff requests the court appoint counsel to represent him, as the Plaintiff is "American With Disability" and that is a "Learning Disability".

B. Declaratory Relief:

Plaintiff requests the Court enter a judgment declaring that the herein-described acts and omissions of each defendants violated Plaintiff's rights under the Constitution and Laws of the United States.

C. Injuntive Relief:

Plaintiff requests the Court issue an injunction enjoining any further transportation of CDCR inmates in vehicles not equiped with seat belts or other safety devices designed to hold inmates in place and prevent them from falling out of vehicles.

D. Monetary Relief:

Plaintiff requests compensatory damages from each defendant individually and seperately, in an amount to be determined at trial or another stage

of this litigation.

E. Punitive Damages:

Plaintiff requests punitive damages from each defendant individually and seperately, in an amount to be determined at trial or another stage of this litigation.

F: Jury Trial:

Plaintiff demands a jury trial on all disputed issues of fact.

G Costs And Expenses of Suit:

Plaintiff requests recovery of all costs and expenses associated with initiating, maintaining, and prosecuting this action against each defendant.

H. Additional Relief:

Plaintiff requests any other or further relief the Court deems just, proper, and equitable

Dated: 11-16-2014 Wayne Pickering
Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Wayne Pickering

v.

Case Number: 1:11-CV-00937 LJO DLB

Ken Clark, et. al

PROOF OF SERVICE

/

I hereby certify that on 11-16-2014, I served a copy of the attached Third Amended Complaint, by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at Valley State Prison:

(List Name and Address of Each Defendant or Attorney Served)

U.S. District Court
Clerk of The Court
2500 Tulare St.
Fresno CA 93721

I declare under penalty of perjury that the foregoing is true and correct.

Wayne Pickering

(Signature of Person Completing Service)